Marsh et al. *v.* The People.

BENJAMIN F. MARSH et al., Appellants, *v.* THE PEOPLE, Appellees.

### APPEAL FROM HANCOCK.

An administrator *de bonis non*, appointed to succeed an administrator whose letters have been revoked, has authority to call upon the removed administrator to account fully for his administration of the estate; and may maintain all necessary actions for the purpose, and may moreover make him answer in damages, for any maladministration of the estate. *Aliter*, where the former administrator dies.

The acceptance of the probate court of the resignation of an administrator, amounts to a revocation of his letters; and if there are other administrators, the burden of administration is cast upon them.

The refusal of an administrator to perform the duties of his trust, is a sufficient cause for revoking his authority.

One of several administrators, is liable for the acts done by either, while they all continue in office. This liability ceases to attach to such of them as are removed from office, for all acts done after the removal.

THIS cause was heard before O. C. SKINNER, Judge, at October term, 1853, of the Hancock Circuit Court.

C. B. LAWRENCE and S. T. LOGAN, for appellants.

G. EDMUNDS and O. H. BROWNING, for appellees.

TREAT, C. J. This was an action of debt, brought in the name of the people to the use of English, administrator *de bonis non* of Wilcox, against Marsh, Felt, and Mellen, former administrators of Wilcox, and Chandler, Robinson, and Morris, their sureties, upon the administration bond. The declaration set forth the grant of administration to Marsh, Felt, and Mellen on the 12th of October, 1839, the execution of the bond in question by the defendants on the same day, the revocation of the letters of administration on the 20th of May, 1846, and the appointment and qualification of English as administrator *de bonis non* on the 21st of July, 1846; and it averred that a large amount of property, belonging to the estate of Wilcox, came to the hands of the former administrators between the grant and revocation of the letters of administration; and it assigned as breaches of the condition of the bond, the failure of the administrators to make an inventory of the property, the conversion of the same to their own use, their neglect to collect and pay the debts due to and from the estate, and their refusal to account for and deliver

to English the property and effects of the estate.    The declaration also alleged that Marsh and Felt sold the real estate of Wilcox, under a license obtained by them from the circuit court in May, 1842; and assigned as a breach of the condition of the bond, their refusal to account for and pay over the proceeds to English.

The defendants filed several pleas, on some of which issues of fact were formed, and to others demurrers were sustained. Of the latter, it will only be necessary to notice the 19th and 20th pleas, which were interposed by the defendant Mellen, alone.    These pleas related only to the breaches assigned for acts done by Marsh and Felt subsequent to the 22d of March, 1842, and they alleged in substance, that Mellen executed the bond as principal, and not as security for his coadministrator; that on the 22d of March, 1842, he tendered his resignation as administrator, which was on that day accepted by the probate court; and that he had not since intermeddled with the estate.

On the trial, the plaintiff read in evidence an order of the probate court, entered on the 22d of March, 1842, accepting the written resignation of Mellen as one of the administrators; also an order of the same court, entered on the 20th of May, 1846, revoking the letters of administration as to Marsh and Felt; also the proceedings in a case of the application of Marsh and Felt for leave to sell the real estate of Wilcox, commenced in 1843, and concluded in 1844, wherein an order of sale was made by the circuit court, and under which order Marsh and Felt sold and conveyed the real estate; and also the proceedings in several cases in the circuit court, commenced by Marsh and Felt as administrators of Wilcox, after the 22d of March, 1842, and in which they recovered judgments.

On the foregoing and other evidence, the court found the issues for the plaintiff, and assessed the damages upon the breaches to $2,204.60; and judgment was rendered against the defendants for the penalty of the bond, to be discharged by the payment of the damages and costs.

First.    Had the administrator *de bonis non* the right to assign breaches of the condition of the bond?    It was held by this court, in Rowan *v.* Kirkpatrick, 14 Illinois, 1, and Newhall *v.* Turney, Ib. 338, that an administrator *de bonis non* could not compel the personal representative of a deceased administrator to account for assets already administered upon; but that the creditors or distributees of the estate could alone maintain such an action.    We are entirely content with the decision made in those cases.    In both of them an administrator *de bonis non* had been appointed upon the death of the first administrator.    It is

Marsh et al. *v.* The People.

undoubtedly the law, irrespective of statutory regulation, that the authority of an administrator *de bonis non* only extends to such property and effects of the intestate as remain in specie, and have not been administered by the former administrator. But this principle is not applicable to the present case. The statute has prescribed a different rule for such cases. The 75th §, ch. 109, R. S., provides : "and in all cases where any such executor or administrator shall have his letters revoked as aforesaid, he shall, nevertheless, be liable on his bond, to such subsequent administrator or administrators, or to any other person or persons aggrieved, for any mismanagement of the estate thus committed to his care as aforesaid; and such subsequent administrator ·or administrators may have and maintain actions of trover, debt, detinue, account, and on the case, against such former executor or administrator, for all such goods, chattels, debts, and credits as shall have come to the possession of him or her, and which shall be withheld, or may have been wasted, embezzled, or misapplied, and no satisfaction made for the same." This provision enlarges the powers of an administrator *de bonis non*, appointed to succeed an administrator whose letters have been revoked. It gives him authority to call upon the removed administrator to account fully for his administration of the estate. It expressly authorizes him to maintain all necessary actions for the purpose. But this provision has no application to the case of the death of the former administrator. It leaves such cases to be governed by the rules of the common law. Without in the least questioning the propriety of the decisions to which reference has been made, we hold that where the letters of an administrator are revoked, the administrator *de bonis non* may maintain the appropriate actions against him, and compel him not only to account for all the property and effects of the intestate that has come to his hands, but to answer in damages for any maladministration of the estate. English, therefore, had the right to assign breaches of the bond, and enforce any liability of the former administrators, incurred by their laches, fraud, or default in the administration of the estate.

Second. Did Mellen cease to be administrator on the acceptance of his resignation? The law in force at the time gave him no right, as a matter of course, to resign his trust. Without the sanction of the probate court, his resignation would have been unavailing. He would still have been one of the administrators, competent to exercise the functions and subject to the responsibilities of the office. But we are inclined to hold that the acceptance of his resignation by the probate court,

amounted to a revocation of the grant of administration as to him, and from that time cast upon Marsh and Felt the burden of the administration. The court had power to remove him from office, and the acceptance of his resignation may be considered as an exercise of that power. The refusal of an administrator to perform the duties of his trust, is a sufficient cause for revoking his authority, and conferring it upon another ; and the removal of one of several administrators, without appointing another in his place, devolves upon the others the entire management of the estate. The resignation may be regarded as a declaration by Mellen that he would no longer participate in the administration of the estate, and the acceptance of the resignation by the court as a revocation of his authority. In the opinion of the court, Mellen ceased to be administrator on the 22d of March, 1842.

Third. Is Mellen liable for the acts of Marsh and Felt, done after he ceased to be administrator ? The three were appointed joint administrators of the estate, and gave a joint bond for the performance of their duties. They executed the obligation as principals, and other persons became responsible as their sureties. It is clear that Mellen is liable for the acts of either, done while they all continued to be administrators. They had a joint interest in the property and effects of the estate, and were jointly bound to discharge the duties of the trust. Mellen had as much authority over the estate as either of the other administrators, and was equally answerable for its management. But this common authority and liability ceased on his removal from office. His control over the estate was gone, and he ceased to be responsible for its future management. All the powers and duties of the administration then devolved upon Marsh and Felt, who alone became responsible for their exercise. Mellen ought not to be held liable for their subsequent maladministration of the estate. This question arose in the case of Brazer *v.* Clark, 5 Pickering, 96 ; and it was decided that the estate of a joint executor was not liable for the defaults of the surviving executor, arising after the death of the former. The court said : " By the tenor of their bond, the executors are bound only for the joint executorship ; they may be answerable for all defalcations which accrue during that trust, and their estates be liable for the deficiencies, notwithstanding they have had no participation in the negligence or fraud; but they are not bound in this manner for acts or neglects which take place after their power has ceased. The survivor succeeds to the whole authority and power, and he alone and those who are sureties for him, are responsible." Again, " It has been urged,

however, that Clark's estate, if not answerable as principal for the default of Winship after Clark's death, is at least liable on the ground of suretyship, Clark being to be considered in the light of a surety; but this would be changing the character of his engagement. He was principal in the bond and liable as such, and when discharged from that liability, he incurred no other." The case of Towne *v.* Ammidown, 20 Pick. 535, asserts the same doctrine.

The court erred in sustaining the demurrers to the nineteenth and twentieth pleas. For all defaults in the administration of the estate, happening before the 22d of March, 1842, Mellen is jointly liable with Marsh and Felt. But for those arising subsequent to that time, English must look exclusively to Marsh and Felt, and the sureties on the administration bond. Mellen is not liable on account of the real estate, for it was converted into assets after the determination of his authority.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*