CHARLES H. TRUMBLE, PLAINTIFF IN ERROR, V. MARY OPHELIA WILLIAMS AND OTHERS, DEFENDANTS IN ERROR.

1. **Administration of Estate**: REMOVAL OF ADMINISTRATOR: RESIGNATION OF TRUST. Where an administrator is about to remove from the state he may resign his trust, and an order of the proper tribunal discharging him cannot be attacked in a collateral proceeding. COBB, CH. J. dissents.

2. ————: POWER OF ADMINISTRATOR DE BONIS NON. An administrator *de bonis non* has the same powers in administering the estate as the first administrator, and will take up the business of settling the estate at the point where his predecessor ceased to act; therefore where the first administrator had filed a petition in the proper court for the sale of real property of the decedent for the payment of debts due from the estate, a license to sell may be issued to the administrator *de bonis non* upon the petition previously filed. In such case the administration is continued by the same official—the administrator, although a different person.

3. ————:· JURISDICTION: PETITION TO SELL REAL ESTATE NOT SUBJECT TO ATTACK IN COLLATERAL PROCEEDING. A petition for license to sell real property for the payment of debts of an estate, filed in the court having exclusive original jurisdiction, and which was acted upon by that tribunal and treated as sufficient, is not, in the absence of fraud or collusion, subject to attack in a collateral proceeding. The want of verification of a petition is not an element of jurisdiction.

4. ————: ————: The authority to grant a license to sell real estate carries with it the implied power to determine the necessity for such sale and the sufficiency of the pleadings presented to the court for that purpose.

5. ————: EVIDENCE. Where the record of an administrator's sale of real estate, or any paper or instrument pertaining to the same is lost, destroyed, or cannot be found, the statute authorizes the party affected to prove the contents as in case of other lost instruments. Evidence, *Held*, To have been improperly excluded.

6. **Jurisdiction**. Titles to real property acquired under proceedings of courts having jurisdiction cannot be attacked in collateral proceedings.

ERROR to the district court for Cass county.    Tried be-
low before MORRIS, J., sitting for POUND, J.

*Chapman & Polk*, for plaintiff in error, cited: *Steel v.
Street*, 89 Ill., 51.    *State v. Carroll*, 25 Conn., 449.    *Clark
v. Commonwealth*, 29 Penn. St., 129.    *Cocke v. Halsey*, 16
Pet., 71.    *Hobson v. Swan*, 63 Ill., 146.    *Hobson v. Ewing*,
62 Ill., 146.    *Wilson v. South Park*, 70 Ill., 46.    *Seward
v. Didier*, 16 Neb., 58.    *Howard v. Moore*, 2 Mich., 227.
*Thompson v. Tomlie*, 2 Pet., 168.    *Grignon's Lessee v. As-
tor*, 2 How., 319.    *Good v. Norley*, 28 Iowa, 188.    *Holmes
v. Beal*, 9 Cush., 223.    *Moore v. Porter*, 51 Wis., 487.

*Marquett, Deweese & Hall*, for defendants in error, cited :
1 Williams Ex., §§ 330, 463, 479, 484, and cases cited.
Wade on Notice, 483.    *Shipman v. Butterfield*, 11 N. W.
R., 283.    *Gregory v. McPherson*, 13 Cal., 562.    *Townsend
v. Tallent*, 33 Cal., 45.    *Snydor v. Palmer*, 32 Wis., 406.
*Hartwig v. The People*, 22 N. Y., 95.    *Dunning v. Corwin*,
11 Wend., 661.    *Sharp v. Johnson*, 4 Hill, 99.

MAXWELL, J.

This is an action of ejectment brought by the defendants
in error against the plaintiff, in the district court of Cass
county, to recover the possession of the west half of the
south-west quarter of section 27, T. 10 N., R. 12 E., in
Cass county.

The defendant below (plaintiff in error), in his answer,
alleges that one William H. Taylor died in June, 1865,
seized of said premises; that after the death of said Taylor,
"to-wit, on or about the 12th day of August, 1865, one
Isaac N. Shambaugh was duly and legally appointed and
qualified as administrator of the estate of the said William
H. Taylor, deceased, by the probate court of Otoe county,
territory of Nebraska, and gave bond in the sum of $2,000,

10

which was duly approved;" that "on the 12th day of February, 1866, the said court, on the petition of the said Isaac N. Shambaugh duly and legally presented to said court, issued a license as provided by law authorizing and empowering the said administrator to sell the real estate of the said William H. Taylor, situated in Otoe and Cass counties, Nebraska, of which the above described lands were a part, said sale to be subject to the approval of said court." The land in question was thereupon offered for sale, but not sold for want of bidders; that on the 14th of May, 1866, Shambaugh tendered his resignation as administrator to the probate court, which was duly accepted, and a petition was thereupon filed in said court for the appointment of C. W. Seymour as administrator of the estate of said Taylor, deceased, and due notice thereof given, and afterwards said Seymour was duly appointed and gave a bond in the sum of $5,000 for the faithful performance of his duty; that thereafter said court issued a license to said Seymour to sell said real estate, and in pursuance thereof "said administrator, after duly and legally advertising and appraising said lands as required by law, sold the same to Mary E. Taylor; that said sale was afterwards duly and legally ratified, approved, and confirmed by said court and the said administrator ordered to execute and deliver in due form of law a deed to Mary E. Taylor for said lands."

It is also alleged that the sale was confirmed by the district court in 1870. The conveyance of the land in question to Mary E. Taylor, in 1866, is then alleged, and the conveyance by her to one McMahon is then averred, together with an allegation of various conveyances to several parties till they reach the defendant below. The plaintiffs below, in their reply, deny that "Shambaugh was ever discharged as administrator or that he surrendered the administration of said estate, or was in any manner legally relieved from the duties of administration originally imposed upon him." * * * "Deny that there was any sale of

said real estate by the said administrator as provided by law, and deny that there was any approval or confirmation of said sale or pretended sale either by Isaac N. Shambaugh or the said C. W. Seymour." They also deny that "Seymour was ever duly or legally appointed as administrator of said estate, and deny that he ever procured an order for the sale of said real estate."

On the trial of the cause the court excluded evidence of the appointment of Seymour as administrator and all subsequent proceedings relating to the sale of the land, and found the issues in favor of the defendants in error. The testimony of the plaintiffs below was taken by deposition and read in their behalf on the trial, from which it appears that the plaintiffs are the children of William H. Taylor, deceased; that Mary O. Williams was born in 1850; that Rufus A. Taylor was born in 1854, and Lillie B. Wheeler in 1859; that their father, William H. Taylor, came to Nebraska City to reside about the year 1857 or 1858, and continued to reside there until the spring of 1865, when, being in very poor health, he attempted to remove to Harrodsburg, Kentucky, but died at Louisville, on his way thither; that Mary E. Taylor was the widow of William H. Taylor, and the mother of the plaintiffs.

The defendant below also offered in evidence the petition for the appointment of Shambaugh, the notice of the application, the order of appointment, the bond, letters of administration, order fixing the time for creditors of the estate to file their claims, inventory of real and personal property, petition to sell real estate, the order to sell the same, and the return of Shambaugh of not sold for want of bidders. Shambaugh thereupon resigned, and Seymour, upon petition, after due notice, was appointed in his stead. The reason for Mr. Shambaugh's resignation is stated in Mrs. Taylor's testimony. She testifies that, "when my husband left Nebraska, he left his business in the hands of Mr. I. N. Shambaugh as his attorney, and some time after my

husband's death Mr. Shambaugh wrote to me that he was going to move to Missouri, and that Mr. Seymour would make application for appointment as administrator of my husband's estate."

The first question presented is the authority of the probate court to accept the resignation of Shambaugh and appoint Seymour.

Section 187 of the law in relation to decedents (Comp. Stat., Ch. 23) provides that, "if any administrator shall reside out of this state, or shall neglect, after due notice by the judge of probate, to render his account and to settle the estate according to law, or to perform any decree of such court, or shall abscond or become insane, or otherwise unsuitable to discharge the trust, the probate court may, by an order therefor, remove such administrator."

Section 189 provides that, "when an administrator shall be removed, or his authority *shall be extinguished*, the remaining administrator may execute the trust; if there be no other the court of probate may commit administration of the estate not already administered to some suitable person, as in case of the death of a sole administrator."

These sections certainly confer authority on the probate court to accept the resignation of an administrator. Here the administrator was about to become a non-resident of the state, consequently the process and judgment of the court would be ineffectual to reach him and compel an accounting. In other words, the administrator who was about to go beyond the jurisdiction of the court surrendered his trust to the court with a statement of his administration to that date. The court thereupon accepted his resignation, in effect removed him for what appeared to be sufficient cause, and afterwards appointed another administrator; this it had authority to do. *Marsh v. People*, 15 Ill., 284. 1 Am. Probate R., 27.

It is clear from the evidence introduced and offered that the probate court of Otoe county had acquired jurisdiction

in the premises; that debts against the estate of W. H. Taylor to the extent of several hundred dollars had been proved, and that it was necessary to sell real property belonging to said estate to pay the same. That tribunal therefore had the authority to remove an administrator whenever sufficient cause for removal was presented to it, and its action in that regard, even if it erred, cannot be questioned in a collateral proceeding. The action of the probate court in appointing or removing an administrator is subject to review, but until set aside is voidable only, and in a collateral proceeding must be treated as valid. The first objection, therefore, is untenable.

2. That no petition was ever presented by Seymour for license to sell real estate. The testimony shows that a petition had been filed by Shambaugh for the sale of the real estate in question, and a license had been issued thereon, under which the land in question had been offered for sale, but not sold for want of bidders.

Section 190 of the decedent's act provides that, "an administrator appointed in the place of any former executor or administrator, for the purpose of administering the estate not already administered, shall have the same powers and shall proceed in settling the estate in the same manner as the former executor or administrator should have had or done, and may prosecute or defend any action commenced by or against the former executor or administrator, and may have execution on any judgment recovered in the name of such former executor or administrator."

This section makes the two administrators the same as one, and the second may complete any business commenced by the first. By the second appointment a new trustee is appointed, who took up the trust at precisely the same point the powers of the former trustee ceased. In other words, the new administrator was clothed by the statute with the same powers as the former, and began the business at the point where the former ceased to act. Administration was

continued by the same official—the administrator, but by a different person.

The former license to sell had been of no avail by reason of the want of bidders. The necessity for a sale, however, still existed to pay debts due from the estate; and this fact was made to appear to the probate court of Otoe county by the petition for the sale of such real estate then on its files, and the report of Mr. Shambaugh of his inability to make the sale. There was no necessity, therefore, for a second petition, and that filed by Mr. Shambaugh was sufficient to authorize the probate court to issue license to sell to Mr. Seymour. The second objection, therefore, is unfounded.

3.  It is claimed that the petition for license " is defective, and not in accordance with the statute, giving the court no jurisdiction to grant license to sell, and is therefore void." The first defect alleged is, that the petition is " not sworn to." In answer to this objection it is sufficient to say that the defect, if such it is, does not affect the jurisdiction of the court; and cannot be attacked in a collateral proceeding. *Johnson v. Jones,* 2 Neb., 126.

In the case cited it is said (page 138): " The affidavit to the petition was not an element of jurisdiction without which the court could not act. It was at most merely a formal part of the petition, a preliminary form in commencing suit; and its omission amounts to one of those irregularities which cannot be collaterally called in question, even if the proceedings had taken place before an inferior tribunal. See *Wright v. Marsh, Lee & Delevan,* 2 Greene (Ia.), 108. *Cropsey v. Wiggenhorn,* 3 Neb., 116. *Wilson v. Macklin,* 7 Id., 52. *Hull v. Miller,* 4 Id., 503. *Dorrington v. Meyer,* 8 Id., 214.

Upon the filing of the petition for the sale of the real estate in question by Shambaugh, the probate court made an order fixing the 12th day of February, 1866, as the time for a hearing on the petition, and ordered a notice of

the time to be published six consecutive weeks in the Nebraska City *News*. On February 12th, 1866, the court, after finding that the notice had been duly published, adds, " and there appearing no objection to the granting of said license, and the necessity for the same having been made to appear to the satisfaction of the court, and the court being fully advised, doth order that license be and is hereby granted to Isaac N. Shambaugh, administrator of the estate of W. H. Taylor, deceased, which said real estate is described as follows:

"E. S. REED,

"*Probate Judge.*"

Then follows the license giving a description of the real estate to be sold. The petition, in our view, states sufficient to authorize the court to issue the license; but even if it did not, and the court would so hold in a direct proceeding to set it aside, yet, where it has been acted upon as sufficient by the court having exclusive original jurisdiction of the subject matter, it will be sustained in this court when collaterally attacked where there was no collusion and fraud. The authority to grant a license to sell real estate carries with it the implied power to determine the necessity for such sale, and the sufficiency of the pleadings presented to the court for that purpose, and where it has jurisdiction its orders and judgments are valid until set aside. There is nothing, therefore, in this objection.

4. The attorney for the defendant below offered to prove by Seymour that, as administrator of Taylor's estate, and under the license offered in evidence, he advertised and sold the land in controversy in the manner provided by law; that he reported the sale to the probate court of Otoe county, and that said court, about the month of October, 1866, confirmed said sale, and the administrator was ordered to make a deed for said premises to the purchaser. This testimony was excluded, and the rejection of the same is now assigned for error.

In view of the loose condition in which the probate court records were kept in some of the counties of the state, the legislature of 1873 passed an act which provides, " That in all cases where lands have been sold by order of the probate court in any county in the territory or state of Nebraska, on application of the guardian of any minor child, or children, or executor, or administrator, and it shall appear in any action in any court held within this state relating to the title to such land, that the record or any part of the record of such sale is imperfect or deficient, or that such record or any part thereof, or any paper or papers, notice, affidavit, document, instrument, or any proceeding whatsoever, from the filing of the petition for license to sell until the execution of the deed to the purchaser, has been lost or destroyed by fire or otherwise, or cannot be found, the contents of such record, paper, notice, affidavit, document, instrument, or other proceeding may be proved in the same manner as in case of other lost instruments or papers, by secondary evidence, and when so proved they shall have the same effect as if proven by the production of the original record, paper, notice, affidavit, document, instrument, or other proceeding, or by a duly certified copy thereof." Comp. Stat., Ch. 20., § 39.

This statute applies in all cases where the records in the probate courts or any part thereof are lost or destroyed. As it was made to appear that there was no record of the confirmation of the sale in the probate court, etc., the statute authorizes proof of such facts by secondary evidence. The court, therefore, erred in excluding the evidence offered. The court also erred in excluding the deeds from Seymour to Mary E. Taylor for the land in question. One of these was made soon after the sale in 1866, and the other after a confirmation of the sale by the district court of Otoe county, August 25th, 1873. The first of these deeds, in connection with the proof of confirmation of sale offered, was admissible in evidence; while the second con-

tains within itself sufficient recitals to entitle a party claiming under it to its protection.

5. The land in question was sold soon after the close of the war, when there was but little immigration to this then territory, and consequently the value of real estate was depressed. The land seems to have sold for its full value at that time, and the fact that it had been once offered and remained unsold for want of bidders shows that competition for it was not active. A creditor of the estate, however, was entitled to be paid, and to have the property sold for that purpose. Carrying out this purpose the court granted a license for the sale of the land, and the sale was made to the mother of the plaintiffs. The consideration, so far as appears, was applied to the payment of the debts of the estate, while the plaintiffs' mother was enabled a few years afterwards to sell the land at a considerable advance. This money, no doubt, in whole or in part was used in the nurture and education of the plaintiffs. But, however this may be, the original purchase price was used in paying their father's debts, and the purchaser should be protected. If this was not so it would be impossible for an executor or administrator to sell real property belonging to the estate of the decedent for the payment of debts due from the estate for any sum near its true value. No one but a speculator in disputed titles would care to invest in property the title of which might be overturned many years afterwards, and the effect would be to prevent competition, depress the value of the property, and in many cases deprive creditors of their just dues. But such is not the law. Titles acquired under the proceedings of courts having jurisdiction must be deemed inviolable in collateral proceedings. And there are no judicial sales around which greater sanctity should be placed than those made of the estates of deceased persons by order of a court upon which the statute has conferred exclusive jurisdiction of the subject. *Seward v. Di-*

*dier*, 16 Neb., 58. *Gregnon's Lessee v. Astor*, 2 Howard, 339. *Thompson v. Tolmie*, 2 Peters, 162. *Ballou v. Hudson*, 13 Gratt., 672. *Mohr v. Porter*, 8 N. W. R., 536. *Hall v. Low*, 102 U. S., 461. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur, COBB, CH. J., dissenting from the first point stated in the syllabus.