STEVENS *v.* OTTAWA PROBATE JUDGE.[1]

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING.

When an executor or administrator refuses to file an account, it is proper for those interested to ascertain, so far as they can, the amount of property that came into his hands, and to state an account for him.

2. SAME—ACCOUNTING—PROBATE COURTS — MATTERS CONSIDERED —PROPRIETY OF DECREE.

Where, on petition of certain legatees against an executor for his removal and for an accounting, the answer filed raised the question whether or not the execution of certain "powers and authorizations" was a settlement of the estate as between the legatees, and that if he was liable to them for an accounting it was as trustee and not as executor, it was

_____

[1] Rehearing pending.

proper for the court to take testimony upon all the questions raised and settle them in one decree.

3. SAME—PROBATE APPEALS—BOND—AMOUNT.
   Where, on appeal from the order of the probate court for an accounting, it appears from said "power and authorizations" that money of the estate had been used to pay liabilities of certain legatees, it was error, in fixing the amount of the appeal bond, to include sums owing to such legatees and their heirs.

4. COURTS — REVIEWING DECISIONS OF COURTS OF SISTER STATES.
   This court cannot sit in review upon the decrees of the courts of a sister State having exclusive jurisdiction over the person and the subject-matter of a suit.

5. APPEAL AND ERROR—PROBATE APPEALS—STATUTES.
   Under Act No. 92, Pub. Acts 1901, amending section 670, 1 Comp. Laws, the determination of the amount of a bond on an appeal from an order of the probate court, is committed solely to the discretion of said court; this court only determining questions of law upon an application to set aside the order so made.

Certiorari to Ottawa; Padgham, J.  Submitted January 15, 1909.  (Docket No. 87.)  Decided May 25, 1909.

Mandamus by Frederick W. Stevens, guardian ad litem of Edward P. Ferry, an incompetent, to compel Edward P. Kirby, probate judge of Ottawa county, to set aside an order fixing the amount of an appeal bond, and to accept a bond tendered.  There was an order denying the writ, and the relator brings certiorari.  Modified and affirmed.

*Kingsley & Wicks* and *Taggart, Denison & Wilson,* for relator.

*Butterfield & Keeney* and *Walter I. Lillie,* for respondent.

Rev. William M. Ferry died testate December 30, 1867, at Grand Haven, Mich.  He made a number of specific bequests, and divided the residuum of his prop-

erty into four shares, one share to each son, and the fourth share to his three daughters in equal parts. His son Edward P. Ferry was made executor, and was given 10 years or more, at his discretion, to convert the estate into condition for distribution. The testator's property was largely composed of partnership interests or joint interests with his son Thomas W. Ferry. The name of the partnership was Ferry & Son, engaged in the lumbering business. After his death the business was continued by the executor and Thomas W. under the names of Ferry & Bro., Ferry, Dowling & Co., and other firm or corporate names.

The executor filed two annual accounts—one March 29, 1869, the other March 10, 1870. No account was afterwards filed by him. The property was appraised at $345,000. It is stated by counsel for appellant that a considerable amount of the funds of the estate belonging to the residuary legatees was continued and put at risk in these different business enterprises by Edward P. and Thomas W. Ferry. Matters appear to have continued in this condition until the year 1883, when financial disaster befell the business affairs of Edward and Thomas. In 1878 Edward P. Ferry, the executor, removed to Utah, and made that place his residence, and engaged in mining operations. In 1893 he became mentally incompetent. In 1901 he was adjudged incompetent by the proper court in Utah, and his sons, W. Mont. and Edward S., duly appointed his guardians. They have been ever since, and still are, his guardians, managing the estate under the direction of the proper court of that State. They have filed in that court semi-annual reports showing receipts, expenditures, and investments, which have been approved by the court. In 1883 the residuary legatees executed what are called "powers and authorizations." Each executed a separate power of attorney and also the paper called "authorization." By the power of attorney the undersigned "made and appointed Edward P. Ferry his true and lawful attorney to make, execute, and de-

liver any instruments in writing, conveyances, proxies, or other papers, to bargain, sell, hypothecate and convey any property, real or personal, of which I am now possessed, or of which I may become possessed during the life of this instrument," etc. The authorization accompanying the above power of attorney reads as follows:

"Edward P. Ferry, executor of the last will and testament of William M. Ferry and Amanda W. Ferry. After full consideration and mutual agreement you are hereby directed and authorized, acting as my attorney, to use any amounts that may be due me from the estates above mentioned, of which you are executor by the wills, or in your judgment and discretion to mortgage and hypothecate any residuary amounts that are to become due, or may in time be due to me, or may be supposed so to become due, at some future time, for the purpose of raising money thereon, or of securing indebtedness already contracted by the firm of Ferry & Brother, of Grand Haven, Mich., or by Thomas W. Ferry, or by Edward P. Ferry of the same place, or either of them, whether said debts be direct or indirect, or for which any or either of the parties named or all of them, may be immediately or remotely liable. At the same time you will keep a true and just account of such debts, or liabilities thus paid, or secured, as well, also, as of the amounts used, to the end that hereafter the said amounts may be properly adjusted."

Under these papers and under the will, the executor or the executor and his partner and brother Thomas remained in possession of the property of the estate, and it was largely used in the payment of their debts. Matters rested without any action on the part of the executor to render an account to his co-legatees or on the part of any of his co-legatees to bring him to an accounting until June 26, 1903, when the living co-legatees, and the heirs of those deceased, filed a petition for the removal of Edward P. Ferry as executor and for an accounting by said executor. One David D. Erwin was duly appointed guardian ad litem and next friend for the executor, Edward P. Ferry, a conceded mentally incompetent. An answer

was duly filed by said executor through his said guardian ad litem and next friend. Coupled with this answer was a cross-petition setting forth the "powers and authorizations" above referred to, alleging that they constituted a settlement of said estate as between the executor and the residuary legatees; that the property had been disposed of by said executor pursuant to those "powers and authorizations;" that such disposal had been acquiesced in by all the residuary legatees; that, if said Edward P. Ferry was liable to them, it was not as executor, but as a trustee under the "powers and authorizations;" and that a court of equity alone had jurisdiction to fix and determine his liability, and prayed for an order declaring the estate to have been settled, and the executor and his bond discharged from liability. To this cross-petition the original petitioners answered, setting forth, as they claim, that the assets of the estate have been used by said executor and invested in various properties in Utah. Testimony was taken both as to what was done under the "powers and authorizations" and also as to the amount of money in the hands of the executor derived from the estate of his testator.

On October 30, 1905, the probate court made an order which did not in terms expressly determine the question of the effect of the execution of the "powers and authorizations," but did direct that the executor file statements of account so that the court might have more light before determining the issues. To this order the respondent made answer again setting forth, in substance, the statements of his first answer and cross-petition, and asking a determination of the question whether the executor should be ordered to account at all. Petitioners filed an answer to this petition. The respondent did not comply with that order, and filed no statement of account. Subsequently the petitioners filed another petition, asking permission to take further proofs in the matter of account. On December 8, 1906, leave to take further proofs was granted. Such proofs were taken, and on December 31,

1907, the probate court entered an order covering 10 pages of the printed record, and finding that the executor, Edward P. Ferry, was indebted as executor in the sum of $1,220,473.44.   Of this amount about two-thirds was interest on the amount found to have been unaccounted for and still in the hands of the executor.   Meanwhile the present guardian ad litem and next friend, Frederick W. Stevens, had been substituted in place of Mr. Erwin.   The respondent gave notice of appeal.   As a condition to take such appeal, the probate judge required the respondent to give a bond in the sum of $860,000, being about the amount that would under the order be due to the petitioners.   The respondent being a legatee, his share was deducted from the amount of the bond.   The respondent tendered a bond of $10,000, claiming that he should give a bond only amply sufficient to cover the costs of the appeal.   The respondent then filed his petition for mandamus in the circuit court for the county of Ottawa, asking that the order of the probate court be set aside, and that the probate court be required to accept the bond tendered by the respondent.   The answer to it by the probate judge covers 62 pages of the printed record.   The circuit judge refused the mandamus.   The case is now before us for review upon the writ of certiorari.   The answer of the circuit judge covers 14 pages of the printed record.

The statute governing appeals from probate courts is Act No. 92, Pub. Acts 1901, and reads as follows:

"SEC. 670. The party appealing shall, at the time of filing notice thereof, file with the judge of probate a bond to the adverse party, in such penalty and with such surety or sureties as the judge of probate shall approve, conditioned for the diligent prosecution of such appeal and the payment of all such damages and costs as shall be awarded against him, in case he shall fail to obtain a reversal of the decision so appealed from.   And in case any person appeals from the allowance and findings of the court upon the examination of his account as executor, administrator, guardian or trustee, the court may, in its discretion, fix the penalty of the bond in such sum as will cover the

amount found due by the probate court upon examination of such account, in which case the bond and sureties thereon shall be liable to the amount of such bond for the amount found due by the probate court or the appellate court upon the final determination of such appeal, including the costs and damages awarded by such appellate court."

The learned counsel for respondent contend:

(1) That the probate court did not possess the power to require such a bond mainly because there had been no such "examination of account rendered" by the executor as the statute contemplates. That he had appeared only by guardian ad litem and next friend, and protested against any liability to account.

(2) That the requirement of such a bond was an abuse of discretion: (a) Because it is impossible to give it and the requirement prevents an appeal. (b) The laches, delay, and acquiescence of the petitioners and their ancestors make the present requirement of the enormous bond inequitable and harsh. (c) That the order of December 31, 1907, refusing to pass directly upon the question of respondent's liability to account, has prevented him from taking an appeal upon that question without giving an impossible bond. (d) That all the respondent's property is in another State and under the custody of a court of competent jurisdiction in that State, and that it is an abuse of discretion for the probate court to require all respondent's property to be taken from that court and brought into this court. (e) That the question of jurisdiction or power of the court to make any such order is so doubtful that it is an abuse of discretion to require a prohibitory bond before permitting a review.

GRANT, J. (*after stating the facts*). We have not before us the great volume of testimony, amounting, it is stated, to about 9,000 pages, or the account as stated by the accountant for the petitioners, made up from the evidence produced in their behalf. The merits of the accounting are therefore not before us. Neither have we before us the testimony taken in regard to the "powers and authorizations," and what was done under them, except the fact that shortly after they were executed Ed-

ward P. Ferry, to whom the powers of attorney and authorizations were given, executed three trust deeds or mortgages for the benefit of the creditors of the parties named in the authorizations.    These trust deeds or mortgages were properly recorded.    The debts of the parties named therein were very large.    It seems evident that the interest of the petitioners in the estate of William M. Ferry was devoted to the purposes mentioned in said authorizations, and with the full knowledge and assent of the parties thereto.

The record consists of two printed volumes of considerable size, and one small volume containing the return of the circuit judge.    The first volume consists of petitions, cross-petitions, answers to petitions, answers to cross-petitions, petition to the circuit court for the writ of mandamus, the return of the judge of probate thereto, and the orders of the probate court during the progress of the proceedings.    The second volume consists of the proceedings in the court of Utah in the estate of Edward P. Ferry, an incompetent person, showing the accounts rendered, their allowance by the court, and the intervention of the petitioners here by a petition there charging extravagance, etc., on the part of the guardians of Mr. Ferry, and asking for their removal.    In this proceeding the petitioners here were defeated in the court of Utah, and no appeal was taken from the decision of that court.    The probate court found that there were errors, mistakes, and frauds in the two annual accounts rendered by the executor, which had been allowed by the then probate court, and corrects them.    The amount found due includes interest upon the amount of the estate found to be in the hands of the executor when appointed from the date of his appointment to the date of the decree.    It allows nothing for his commissions, fees, and expenses except the compensation allowed in his two annual accounts.    The order of the probate court does not state the amount of the estate found to be in his hands and which it is charged he misappropriated and converted to his own

use. The judge of probate in his return to the circuit court stated that the balance due from the executor, exclusive of interest, was about $420,000—a sum considerably larger than that fixed by the inventory of the estate. Taking this as the amount of the property of the estate and deducting it from the total amount due, it leaves $800,473 as interest. Counsel for the executor, through his guardians and his guardian ad litem and next friend, contend that the statute applies only to an account rendered by the executor, and not to the extraordinary circumstances of this case, and that no such account has been rendered. We think counsel are in error upon this point. If an executor or administrator refuses to file an account, it is proper for those interested to ascertain, so far as they can, the amount of property that came into his hands, and to state an account for him.

The position of the executor has been, and still is, that the execution of the "powers and authorizations" was a settlement of the estate so far as the residuary legatees were concered, and that, if the petitioners were in position to call Mr. Edward P. Ferry to an accounting, it is as trustee under those documents, and not as executor. He, therefore, through his representatives, declined to render an account. They asked to have that question first determined by the probate court for the reason that there would be no occasion for an accounting as executor if their position in this respect should be sustained. It would have been entirely proper for the judge of probate to adopt that course, but he was under no legal obligation to do so. While the judge of probate did not expressly decide this question, yet he did so by clear implication; otherwise he would not have proceeded to an accounting.

Three questions were involved in the original petition and answer: (1) The removal of the executor; (2) his liability to an account; and (3) an accounting. It was entirely proper for the court to take testimony upon these questions, and decide them by one decree. Compliance with the order of the probate court to file an account

would not have waived the other defense that the estate had been settled as between the legatees, and no accounting could be called for by them. While it appears to us upon the proceedings in the case now before us that it would have been wise for the executor to have complied with the order of the court as to accounting, we must consider that the executor has all through been represented by well-known and competent attorneys in this State of good reputation, and that they in good faith advised the course pursued.

We think the probate court was in error in including in this bond the amount which would be due to the petitioners as heirs of Thomas W. Ferry, deceased. The "powers and authorizations" executed by the petitioners were for his benefit, as well as that of Edward P. Ferry. In so far as Edward P. Ferry used the property of the estate to pay the liabilities of Thomas W. Ferry, that action was binding upon him and his heirs. It requires no argument to prove that, if he were living, he would not be heard to say to his brother: "Give me my share of the estate, which I have already had." Thomas W. Ferry's estate is not settled. His executor or administrator is not a party to this litigation. The amount to which he would be entitled as heir should have been deducted from the amount of the bond.

A large part of the record and of the briefs of counsel is devoted to the administration of the estate of Edward P. Ferry, an incompetent, in Utah by his two sons, his guardians. It is urged that the records there show an unjustifiable and extravagant expenditure in the management of that estate by his guardians; the object being to show that the estate of the executor may be impoverished. While the compensation and other expenses allowed the guardians by the Utah court, a court corresponding in jurisdiction to the circuit courts of this State, may seem large, yet they were allowed by a court having exclusive control thereof. This court cannot sit in review upon the decrees of the courts of a sister State having exclusive

jurisdiction over the person and the subject-matter of a suit. The petitioners here applied to the court there, had a hearing, and were defeated. We must assume that the court of Utah will take proper care of the estate, and see that it is not dissipated. The proceedings in the court of Utah, and the allowance there made, seem to have had a good deal of influence with the probate court in fixing the amount of this bond. We think they are not entitled to consideration. For 35 years the petitioners, legatees under the will of William M. Ferry, took no steps whatever to compel an accounting or to procure the removal of the executor notwithstanding they knew that for many years he was absolutely incompetent to manage any business, and was broken down physically, and, to some extent at least, mentally, soon after his financial troubles in 1883. Then, too, the will gave the executor 10 years or more, if necessary, to put the estate in condition for distribution. It is evident from the record now before us that the testator contemplated that the businesses in which he was interested should continue. What caused the failure we have no means now of knowing. Executors and trustees are not generally liable for interest on trust funds in their hands. It may be a doubtful question whether the executor is liable for interest when legatees have authorized him to use their funds for the purposes mentioned in the "powers and authorizations." Upon this we now intimate no opinion. It may furnish a good reason why a bond prohibitive of an appeal should not be required. A silence of 35 years, or 20 years after the execution of the "powers and authorizations" unexcused, with the knowledge of what was done thereunder, may furnish a reason why interest should not be charged, even if the executor is liable to an accounting. But these are questions which have been passed upon by the probate court and determined against the contention of the relator. The legislature has seen fit to commit to the discretion of that court alone the fixing of the bond in such cases. The appellate court can only determine questions of law upon

an application to set aside the order so made. Power is not given to this court to review that discretion, even though the bond required should be prohibitive of an appeal.

It follows that the order of the probate judge must be so modified as to require a bond in one-half the amount found by that court to be due from the executor, viz., one-half of $1,220,473.44. The costs of this appeal will abide the final hearing upon the merits should an appeal be made.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.