MICHIGAN TRUST CO. v. FERRY.

(Circuit Court of Appeals, Eighth Circuit. January 10, 1910.)

No. 3,107.

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS (§ 469*)—SETTLEMENT OF ACCOUNTS—DEVASTAVIT—PERSONAL CLAIM—JURISDICTION.

In 1867 F. was appointed executor of the will of his father by a probate court in Michigan. He qualified, and filed two reports prior to 1871. He became a resident of Utah in 1878, and was adjudged incompetent, and guardians of his person and estate were appointed by a Utah court in

1901. In 1903, the residuary distributees of his father's estate filed a petition in the Michigan court that he account for the unadministered assets of that estate and that the Trust Company be appointed administrator de bonis non in his place, and a notice of hearing of this petition was published as prescribed by the Michigan statutes and served on him in Utah. By a guardian ad litem and next friend and by attorneys employed by his general guardians by authority of the Utah court he appeared, defended, and filed a cross-petition to the effect that he should not be required to account and that the administration should be closed. After evidence and hearing the Michigan court found that he had committed a devastavit, decreed that he was personally liable to the estate, and that he should pay out of his individual property to the Trust Company, which it appointed administrator de bonis non, $915,355.08. The Trust Company brought an action against F. in Utah upon this decree.

*Held:* (1) The probate court in Michigan had jurisdiction to settle the account of the assets of the estate between F., the executor, and the estate, and to order him to turn them over to a successory administrator.

(2) It had no jurisdiction to adjudicate the claim against him personally and against his individual property for his devastavit, or to order the amount it adjudged due on account of that claim paid to the Trust Company as administrator de bonis non or otherwise.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 469.*]

**2.** CONSTITUTIONAL LAW (§ 43*)—DUE PROCESS OF LAW—SUBSTITUTED SERVICE.

One who accepts an office, a right, or a privilege bestowed by virtue of the statutes of a state which provide that the courts of that state may acquire jurisdiction to determine specified controversies between him and others by means of a published notice of hearing thereof consents to the service of notice thereof in that way, and is estopped from denying its sufficiency.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. § 43.*]

**3.** EXECUTORS AND ADMINISTRATORS (§§ 468, 469*)—PROBATE COURT—DEVASTA-VIT—NO JURISDICTION OF A PERSONAL CLAIM FOR.

A proceeding for the administration of an estate is a proceeding in rem.

A claim of residuary legatees and devisees against the person and the individual property of one who has been an executor or administrator of an estate, founded upon his conversion and maladministration of the assets thereof, is a claim in personam, and it is not within the scope of the jurisdiction of a probate court in Michigan in a proceeding for the administration of an estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1999–2013; Dec. Dig. §§ 468, 469.*]

**4.** EXECUTORS AND ADMINISTRATORS (§ 120*)—PROBATE COURT—DEVASTAVIT—NO JURISDICTION TO DECREE PAYMENT FOR TO ADMINISTRATOR DE BONIS NON—"ADMINISTERED ASSETS."

An administrator de bonis non takes the unadministered assets of an estate only, and those which do not remain in specie, but have been changed in form, mixed with those of the former executor, or converted to the latter's use, are "administered assets."

A claim against the person or the individual property of an administrator or executor for debt or damages on account of his conversion or maladministration of the assets of the estate is the property of the creditors and distributees thereof, and not of an administrator de bonis non, and a probate court has no jurisdiction to decree its payment to such a successory administrator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 485–492; Dec. Dig. § 120.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** JUDGMENT (§ 28*)—JURISDICTION—PORTION OF DECREE IN EXCESS OF VOID.

That portion of an order, judgment, or decree of a court, which has jurisdiction of a subject-matter and of the parties to it, which is in excess of its jurisdiction, is as futile as a decree without any jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 39; Dec. Dig. § 28.*]

**6.** PROCESS (§ 48*)—SUBSTITUTED SERVICE—SERVICE ON NONRESIDENT—PERSONAL SERVICE OR APPEARANCE REQUISITE IN PERSONAL ACTIONS.

Personal service of notice within the jurisdiction of the court, or a voluntary appearance, or a consent to substituted service is indispensable to the jurisdiction of a court to adjudicate a claim which is merely personal, or which charges property of the defendant beyond the territorial jurisdiction of the court.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 46; Dec. Dig. § 48.*]

**7.** CONSTITUTIONAL LAW (§ 309*)—DUE PROCESS—NOTICE MUST WARN OF CLAIM AND OF RELIEF SOUGHT.

The notice which will constitute due process of law must be such that the defendant may be advised from it of the nature of the claim against him and of the relief sought from the court if the claim is sustained.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. § 309.*]

**8.** COURTS (§§ 365, 374*)—DUE PROCESS—QUESTION FOR FEDERAL COURTS—NOT GOVERNED BY STATE LAWS AND DECISIONS.

State laws and decisions cannot determine for the national courts what constitutes sufficient process of law, sufficient service of process, or sufficient appearance of parties, but it is their duty to exercise their independent judgment in deciding these questions notwithstanding the full faith and credit provision of the Constitution.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 981; Dec. Dig. §§ 365, 374.*

State laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**9.** CONSTITUTIONAL LAW (§ 309*)—DUE PROCESS—INSUFFICIENT NOTICE.

Notice of a hearing before a probate court of a petition for the settlement of an account of an executor for his removal and the appointment of an administrator de bonis non is not due process of law to sustain a decree against the person and the property of the individual served, to the effect that he pay out of his own property $915,355.08 to the successory administrator on account of his conversion and maladministration of the assets of the estate.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. § 309.*]

**10.** INSANE PERSONS (§ 94*)—GUARDIAN AD LITEM—PREVIOUS JURISDICTION OF WARD INDISPENSABLE TO HIS AUTHORITY AND TO POWER OF COURT TO APPOINT HIM.

No court has jurisdiction to appoint a guardian ad litem to defend, and no guardian ad litem has authority to defend, or to submit to any court, or to appear in the litigation over any claim or controversy of which that court had not previously acquired jurisdiction by service of due process upon his ward.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 164; Dec. Dig. § 94.*]

**11.** INSANE PERSONS (§ 93*)—GENERAL GUARDIANS—NO AUTHORITY TO CHARGE ESTATE OR PERSON OF WARD BY APPEARING IN OTHER JURISDICTIONS.

Neither the general guardians of the person and estate of a ward, nor the court which appoints them, have any power to charge the person or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the property of their ward within the territorial jurisdiction of that court by defending in or submitting to any court within another jurisdiction, or by appearing therein in any litigation over any claim of which the latter court had not otherwise acquired jurisdiction.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 163; Dec. Dig. § 93.*]

In Error to the Circuit Court of the United States for the District of Utah.

Action by the Michigan Trust Company against Edward P. Ferry. Judgment for defendant, and plaintiff brings error. Affirmed.

Henry C. Hall and Edward B. Critchlow (Dunbar F. Carpenter, on the brief), for plaintiff in error.

Waldemar Van Cott and Joseph T. Richards, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. The Michigan Trust Company, a corporation of the state of Michigan, brought this action in the Circuit Court of the District of Utah to recover $915,355.08 from Edward P. Ferry, a citizen of that district. The Circuit Court sustained a demurrer to the plaintiff's complaint and denied a motion to amend it, and these rulings are assigned as error. The material facts set forth in the complaint and the proposed amendment are these: In the year 1867 the defendant, Edward P. Ferry, who was then a citizen of Michigan, was appointed executor of the will of his deceased father, William M. Ferry, by the probate court of the county of Ottawa, in the state of Michigan. He qualified as such executor, entered upon the discharge of the duties of his office, filed two annual accounts, one in March, 1869, and another in March, 1870, and took possession and disposed of a large amount of property of the estate. In 1878, he removed from Michigan and became a resident and citizen of Utah. On February 13, 1901, he was adjudged to be an incompetent person by the district court of the Third judicial district of the state of Utah, his sons, W. Mont Ferry and Edward S. Ferry, citizens of Utah, were by that court appointed guardians of his person and of his estate, and have since acted as such.

On June 26, 1903, residuary legatees and devisees under the will of William M. Ferry filed in the probate court in Michigan their petition wherein they prayed that Edward P. Ferry should be removed as executor of his father's will, "that he or his representatives be ordered to account forthwith to said court for the residue of said estate of said deceased which was unadministered, for the appointment of the Michigan Trust Company, plaintiff herein, or some other suitable person, as administrator de bonis non with the will annexed of said estate, and that such probate court make such other and further order in the premises as to it might seem proper." Thereupon the probate court made an order that the petition should be heard on July 21, 1903, caused a notice of the petition and of the time and place of the hearing thereon

to be published in a newspaper as required by the statutes of Michigan, a copy of the order was served on Edward P. Ferry and upon his guardians in the state of Utah, the district court of Utah ordered that the guardians of the estate of Edward P. Ferry be permitted to defend against the claim of this petition, and these guardians retained attorneys who undertook such a defense and were paid by the district court out of the estate of Edward P. Ferry in Utah. On motion of these attorneys the probate court of Ottawa county appointed one of them guardian ad litem and next friend of Edward P. Ferry, and he filed an answer to the petition of the legatees and devisees and a cross-petition wherein he alleged that Edward P. Ferry had fully administered and accounted for the estate of his father and prayed that he be discharged as executor. An answer to this cross-petition was filed, there was a hearing upon the issues presented by these pleadings, and thereafter the Michigan probate court found that the estate of William M. Ferry had not been fully administered, that Edward P. Ferry was not entitled to an order closing it, that it was his duty to render a true account of his doings as executor, that he had failed to do so, that the probate court had been compelled to and had made such an account, that there were errors, mistakes, and fraud in the rendition of the two annual accounts made by Edward P. Ferry as executor in 1869 and 1870, which the court had corrected, that large amounts of money and of property of the estate of his father had come to the hands of Edward P. Ferry as executor which he had misappropriated and converted to his individual use, that "Edward P. Ferry, executor, is indebted to the estate of Rev. William M. Ferry, deceased, at this date, upon balance of account, in the full and true sum of one million two hundred and twenty thousand four hundred and seventy-three and $^{44}/_{100}$ dollars ($1,220,-473.44), and that said sum of money is now justly due and owing by said Edward P. Ferry to said estate, over and above all legal set-offs or counterclaims," and this court ordered and decreed that the prayer of the cross-petition be denied, that Edward P. Ferry be removed from his office of executor, that the Michigan Trust Company be appointed administrator de bonis non with the will annexed of the estate of William M. Ferry upon the filing of its acceptance of the trust, that as Edward P. Ferry is himself a residuary legatee of one-fourth of the residue of the estate of his father he should not be required to pay over that portion of the amount due from him as executor to the estate, but that "the remainder of the indebtedness owing by said Edward P. Ferry, said executor to the estate of said William M. Ferry, deceased, is the sum of nine hundred and fifteen thousand three hundred and fifty-five and $^{08}/_{100}$ dollars ($915,355.08), and it is further ordered, adjudged and decreed that said Edward P. Ferry is individually liable therefor to the estate of William M. Ferry, deceased, and that, within sixty days from this date, said Edward P. Ferry, said executor, do pay the sum of nine hundred and fifteen thousand three hundred and fifty-five and $^{08}/_{100}$ dollars ($915,355.08) to the Michigan Trust Company, administrator de bonis non with the will annexed of the estate of said William M. Ferry, deceased, together with interest on said sum from this date until paid at the rate of five (5%) per cent. per annum." After this order and decree was made the guardian ad

litem and next friend of Edward P. Ferry tried to take an appeal there-from, but did not succeed.

Has a probate court which lawfully appoints one executor of an estate jurisdiction upon substituted service of notice upon him in another jurisdiction to adjudicate his individual liability for the taking of property of the estate from himself as executor and the conversion of it to his own personal benefit? If so, has such a court jurisdiction to determine and fix this individual liability without notice to him that such an adjudication would be sought and if warranted by the proof might be rendered?

The cause of action set forth in the complaint rests upon the decree of the probate court of Ottawa county that Ferry, the individual, is liable for a fixed amount of damages for his taking from himself as executor and his conversion to his own use of property of the estate which came to his hands as executor. If that court had jurisdiction to render that adjudication the complaint stated a good cause of action; if it did not have that jurisdiction the demurrer was rightly sustained. If another person had been the executor and Ferry had taken from him in Michigan property of the estate of his father, had converted it to his own use, and then left the state, there could have been no doubt that no court in Michigan could have acquired jurisdiction to determine his liability therefor by the publication of any summons or notice, or by the service of any notice upon him beyond the boundary of the state. Personal service upon him within the jurisdiction of the court, within the state of Michigan, or his voluntary appearance would have been indispensable to the acquisition of jurisdiction to determine his liability.

The statutes of Michigan require any executor before he enters upon the execution of his trust to give a bond to the judge of probate in such sum as he may direct to administer according to law and to the will of the testator all his goods, chattels, rights, credits, and estate which shall at any time come to his possession, but no court of Michigan could have acquired jurisdiction to adjudge the liability of an obligor on such a bond upon substituted service when he was beyond the jurisdiction of the court. The laws of a state have no extraterritorial force; no tribunal established by it can extend its process beyond the bounds of the state so as to subject either persons or their property to its decisions without their consent. Whenever a judicial proceeding involves the adjudication of the personal liability merely or of the liability of the property of the defendant without the state, he must be brought within the jurisdiction of the court by service of process upon him within the state or by his voluntary appearance. Pennoyer v. Neff, 95 U. S. 714, 722, 723, 727, 732, 733, 24 L. Ed. 565; D'Arcy v. Ketchum, 11 How. 165, *174, *176, 13 L. Ed. 648; Galpin v. Page, 18 Wall. 350, 367, 368, 369, 21 L. Ed. 959; Insurance Company v. Bangs, 103 U. S. 435, 439, 440, 26 L. Ed. 580; Old Wayne Life Ass'n v. McDonough, 204 U. S. 8, 17–21, 27 Sup. Ct. 236, 51 L. Ed. 345; Brown v. Fletcher's Estate, 210 U. S. 82, 90, 91, 92, 28 Sup. Ct. 702, 52 L. Ed. 966.

How, then, can the judgment of the probate court in this case be sustained? Counsel for the plaintiff answer on the ground that Fer-

ry accepted the appointment of executor, and thereby submitted himself to the power of the Michigan court, and his departure from that state failed to deprive that court of jurisdiction over him. To the extent that his acceptance of his office and the notice of hearing which was published extended the jurisdiction of that court over him, this answer seems to be sound. The statutes of Michigan granted power to this probate court to notify and require every executor and administrator appointed by it to render to it an account of all moneys and other property of the estate he was administering in his hands as such executor or administrator and of the proceeds and expenditures thereof (Comp. Laws Mich. 1897, § 9345); to give this notice by publication (sections 688, 9346); to remove the executor or administrator if he failed to render to the judge of probate a satisfactory statement of his accounts (section 9347); and to cause the bond of the executor or administrator to be prosecuted whenever he should refuse or omit to perform the order or decree of the court for the rendition of an account or upon a final settlement or for payment of debts, legacies, or distributive shares (section 9491). Those statutes also provided that in such a case the writ should run in the name of the judge of probate (section 9492); that if judgment should be rendered execution should be awarded for the value of all the estate of the deceased which should have come to the hands of the executor or administrator for which he should not have accounted, "and for all such damages as shall have been occasioned by his neglect or maladministration" (section 9495); that all moneys received on any such execution should be paid to the rightful executor or administrator, and should be assets in his hands to be administered according to law (section 9496); and that when an executor or administrator, after being duly cited by the probate court, should neglect to render his account, he should be liable on his bond for all damages which might accrue, and his bond might be put in suit by any person interested in the estate (section 9439). The petition of the residuary legatees and the notice of hearing thereon which was published pursuant to the statutes gave the defendant ample warning that the question whether or not he should be removed as executor, whether or not he should be ordered to account for the residue of the estate of his father unadministered, and whether or not the Trust Company should be appointed administrator de bonis non in his place, would be considered and might be decided by the court at the hearing. When the office of executor was tendered to him by that court the statutes of Michigan provided that, if he accepted that office, that court might acquire jurisdiction to determine all these issues between him and the legatees of his father's estate upon a service of a notice of the time and place of hearing upon him by publication. That office was tendered to him on the condition imposed by these statutes that the probate court should have the power to call him before it, and to adjudicate these issues for or against him without other warning than a notice published in a newspaper, and he necessarily accepted that condition when he accepted his office. That condition was not limited to instances in which one or more of these issues should arise while he was in the state of Michigan, but it included all cases in which one or more of these issues should arise while he was executor, and was as effective after as before

his departure from the state. One who accepts an office, a right, or a privilege bestowed by virtue of the statutes of a state, which provide that the courts of that state may acquire jurisdiction to determine specified controversies between him and others by means of a published notice of hearing thereof, consents to the service of notice in that way, and is estopped from denying its sufficiency. By the defendant's acceptance of the office of executor from the Michigan probate court, and by that court's published notice of the time and place of its hearing, that court acquired plenary jurisdiction to adjudicate whether or not he should be removed as executor, whether or not he should account for the unadministered assets of his father's estate, the true state of that account, and whether or not the Trust Company should be appointed administrator de bonis non, and its determination of these issues was conclusive. Spencer v. Houghton, 68 Cal. 82, 88, 89, 8 Pac. 679; Trumpler v. Cotton, 109 Cal. 250, 254, 255, 41 Pac. 1033; Moore v. Fields, 42 Pa. 467, 473; Martin v. Martin, 214 Pa. 389, 394, 63 Atl. 1026; Usury v. Usury, 82 Ga. 198, 8 S. E. 60, 61; Stevens v. Kirby, 156 Mich. 526, 121 N. W. 477, 480.

It is one thing, however, to adjudge the true state of the account of the assets of an estate in the hands of an executor and to require him to pay or deliver them to his successor, and a very different thing to adjudge that the person who holds the office of executor has taken assets of the estate from himself as executor, has committed a devastavit, and is personally liable in damages therefor in a specific amount, and to require him to pay that amount out of his individual property. The former is a determination of the true state of the account of the assets of the estate between the executor and the estate; the latter is the adjudication of the liability of a person and of his individual property for a tort, or, if the tort be waived, for a debt. The former was within the scope of the jurisdiction of the Michigan probate court because it was a determination, after due notice of its proposed action, of the state of the res that was the subject of the proceeding before it; the latter was the adjudication of a challenged cause of action in personam at common law.

A proceeding in a probate court to administer upon the estate of a deceased person is a proceeding in rem and not in personam. The property of the estate within the jurisdiction of the court is the defendant, the executor or administrator is its representative, all claiming any interest in that property under the deceased are parties to the proceeding (Grignon's Lessee v. Astor, 2 How. 319, 337, 11 L. Ed. 283; Sheldon's Lessee v. Newton, 3 Ohio St. 494, 503; Wilson v. Hartford Fire Ins. Co., 90 C. C. A. 593, 595, 164 Fed. 817, 819, 19 L. R. A. (N. S.) 553), and the only finding and decree which the Michigan probate court was empowered to make, and that which it should have made in the case before it, was an adjudication of the amount of the assets of the estate of the deceased that were in the hands of the executor, Ferry, or unaccounted for by him, and an order that he pay or deliver them over to his successor in interest. The limit of its power was such an order and a proceeding for contempt for its disobedience, which would have been futile, because the person of the defendant Ferry in Utah was beyond reach of the process of the Michigan court.

The decree that court rendered, however, was that Ferry, the individual, was personally liable for a devastavit in the sum of $915,-455.08, more than half of which was interest, and that he should pay this amount out of his individual property to the administrator de bonis non of the estate of his father. The Surrogate's Court in the state of New York and the orphans' court in the state of New Jersey were authorized by statutes of those states to exercise the powers of courts of chancery over guardians, administrators, and executors, and to issue executions to enforce their decrees which, by virtue of those statutes, created the same liens and priorities as the judgments of other courts, and the cases of Pyatt v. Pyatt, 46 N. J. Eq. 285, 18 Atl. 1048, 1049, and Seaman v. Duryea, 11 N. Y. 324, 329, which are cited and much relied upon by counsel for the complainant, arose under those statutes. They are not, however, authoritative in the case under discussion, for the orders and decrees of probate courts in Michigan create no liens and may not be enforced by execution. The only way in which those courts are authorized to compel obedience to their orders or decrees is by imprisonment for contempt, and the fact that such a proceeding would be futile to compel obedience to an order that one should pay $900,000 out of his individual property, since a commitment under such an order would constitute imprisonment for debt, and that the proceeding for contempt is only available to compel the payment or delivery of assets of the estate held by one in trust for the distributees, is very persuasive that the decree of the probate court in this case was unwarranted. "It is true" said the Supreme Court of Michigan, "that probate courts are 'courts of record,' being declared to be such by the Constitution, but they are not 'courts of law,' according to the ordinary use of that term. They derive their origin and their jurisdiction from a source altogether distinct from the common law, and they exercise no functions peculiar to that system. Parties cannot litigate questions of fact in them, except in the instance of probate of wills, or when the power of appointment is to be exercised." Holbrook v. Cook, 5 Mich. 225, 228. "The jurisdiction over contentious litigation belongs, under the Constitution, to courts of law and equity." Detroit, L. & N. R. Co. v. Probate Judge, 63 Mich. 676, 30 N. W. 598; Ferris v. Higley, 20 Wall. 375, 22 L. Ed. 383. And the hearing and adjudication of the cause of action in personam against Ferry for the damages caused by his waste and conversion of the assets of the estate of his father was not within the scope of the jurisdiction of the probate court of Michigan.

Again, that court adjudged, on the petition of residuary legatees and devisees of the estate of William M. Ferry, that the defendant was individually liable to the estate for a devastavit in the sum of $915,355.-08, and that he should pay this amount to the administrator de bonis non, the Trust Company. But at common law an administrator de bonis non takes the goods, chattels, and credits of the deceased which have not been administered only, and all his property which has been mixed with that of the former executor or administrator, or which has been converted to his individual use, or into another form, in short all property of the deceased which does not remain in specie is administered, and not unadministered, property. The former executor is lia-

ble to creditors, legatees, and distributees only for his conversion and waste of the assets of the estate, and they may maintain suits against him therefor. He is not accountable to an administrator de bonis non for such maladministration or for anything except the goods and personal property of the deceased in his hands in specie, and no court has jurisdiction to render decrees or orders against him for damages for delinquencies or devastavits in favor of a successory administrator unless expressly authorized to do so by the statute under which it acts. Beall v. New Mexico, 16 Wall. 535, 541, 21 L. Ed. 292; United States v. Walker, 109 U. S. 258, 260, 3 Sup. Ct. 277, 27 L. Ed. 927; Hanifan v. Needles, 108 Ill. 403, 407, 408; State v. Fidelity & Deposit Co., 100 Md. 256, 59 Atl. 735, 736; Carrick's Administrator v. Carrick's Executor, 23 N. J. Eq. 364, 366; Lucas v. Donaldson, 117 Ind. 139, 19 N. E. 758, 760; Potts v. Smith, 3 Rawle (Pa.) 361, 24 Am. Dec. 359; Rowan v. Kirkpatrick, 14 Ill. 1, 8; Newhall v. Turney, 14 Ill. 338; Marsh v. People, 15 Ill. 284, 286; Coleman v. McMurdo, 5 Rand. (Va.) 51; Bank of Penn. v. Haldeman, 1 Pen. & W. (Pa.) 161; Bell v. Speight, 11 Humph. (Tenn.) 451; Swink v. Snodgrass, 17 Ala. 653, 52 Am. Dec. 190; Slaughter v. Froman, 5 T. B. Mon. (Ky.) 19, 17 Am. Dec. 33; Gamble v. Hamilton, 7 Mo. 469. This was established and familiar law when the Michigan statutes were enacted, but they granted no authority to an administrator de bonis non to recover from a former executor or administrator debt or damages for his conversions or delinquencies and gave no jurisdiction to the probate courts of that state to decree or order the payment of such debts or damages to him. The statutes of Illinois expressly provided that a successory administrator might maintain any appropriate action or proceeding against a removed executor or administrator for any waste, mismanagement of, or breach of duty with respect to the estate occurring during the latter's administration (Rev. St. Ill. 1874, c. 3, § 39), and the Supreme Court of that state held that in the absence of such a statute an administrator de bonis non could not, while under it he might, sustain such an action (Hanifan v. Needles, 108 Ill. 403, 407, 408). No such provision has been discovered in the statutes of Michigan. On the other hand, they leave the causes of action against an executor or administrator where the common law placed them—in the hands of the creditors, legatees, and distributees of the estate. They limit by express terms the power of the probate courts of that state on the death or removal of a former executor or administrator to the grant of letters of administration "of the estate not already administered" (sections 9318, 9332), and they provide one way only whereby the probate court may ever acquire any jurisdiction or control whatever over the debts or damages or the claims therefor caused by the neglect or maladministration of an executor or administrator, and that method is by means of a plenary suit in another court upon his bond, brought, not by the administrator de bonis non, but by the judge of probate (section 9491). And they provide one way and one way only whereby the administrator de bonis non may ever acquire the control or possession of any of these debts or damages, and that is a method whereby he may acquire the proceeds thereof only after they have been collected by means of an execution issued on a judgment in an action brought by the probate

judge in another court and a subsequent payment of the amount thus recovered to the administrator de bonis non under section 9496. Expressio unius est exclusio alterius. The prescription of this single exception to the common-law rule upon this subject excludes all others, and the conclusion that the Michigan probate court had no jurisdiction on the accounting to render any decree or order that the defendant Ferry should pay and the administrator de bonis non should recover from him the debt or damage resulting from his conversions, neglects, and maladministration is logical and irresistible.

Counsel say, however, in answer to this proposition that where an administrator or an administrator de bonis non has recovered a judgment in one state he may maintain an action upon it in his own name in another jurisdiction and his title will be treated as surplusage, and this is true where the court which rendered the judgment had jurisdiction so to do. Talmage v. Chapel, 16 Mass. 71; Lewis v. Adams, 70 Cal. 403, 11 Pac. 833, 59 Am. Rep. 423; 2 Black on Judgments, § 922. But no summons or notice was ever served on the defendant warning him that any claim that the Trust Company as administrator de bonis non or otherwise was entitled to recover damages for his maladministration of the estate of his father, would be considered or adjudicated by the probate court in Michigan, no cause of action on behalf of any such administrator was pleaded or suggested in the petition to which his attention was called, the findings and decree of the probate court are that the defendant's indebtedness therefor is to the estate of the father, while the order of the probate court that this debt be paid to the Trust Company rests upon no cause of action pleaded, and hence it was beyond the jurisdiction of that court and void. United States v. Walker, 109 U. S. 258, 265, 267, 3 Sup. Ct. 277, 27 L. Ed. 927. That portion of an order, judgment, or decree of a court that has jurisdiction of the subject-matter and the parties to a controversy, which is in excess of that jurisdiction is as futile as an entire decree without any jurisdiction. Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872; Bigelow v. Forrest, 9 Wall. 339, 19 L. Ed. 696; Day v. Micou, 18 Wall. 156, 21 L. Ed. 860; Foltz v. St. Louis & S. F. Ry. Co., 8 C. C. A. 635, 639, 60 Fed. 316, 320.

Nor is this all. The effect of the adjudication of the probate court of Michigan if authorized must be to deprive the defendant of property worth more than $900,000 situated in the state of Utah, if he has that much property there. The fifth amendment to the Constitution of the United States forbids such a deprivation without due process of law. What constitutes due process of law is a question which it is the duty of the national courts to exercise their independent judgment to decide when it is properly presented for their decision, notwithstanding the requirement of the Constitution that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. State laws and decisions may not determine for the federal courts what shall be deemed sufficient process of law, sufficient service of process, or sufficient appearance of parties. Insurance Company v. Bangs, 103 U. S. 435, 439, 26 L. Ed. 580; D'Arcy v. Ketchum, 11 How. 165, 176, 13 L. Ed. 648; Pennoyer v. Neff, 95 U. S. 714, 722, 723, 24 L. Ed. 565.

Due process of law must give to the defendant "notice of the charge or claim against him, and an opportunity to be heard respecting the justice of the order or judgment sought. The notice must be such that he may be advised from it of the nature of the claim against him, and of the relief sought from the court if the claim is sustained." In re Rosser, 41 C. C. A. 497, 502, 101 Fed. 562, 567; In re Wood and Henderson, 210 U. S. 246, 254, 28 Sup. Ct. 621.[1] The nature of the claim against the defendant which the Michigan probate court sustained and decreed was a claim against his person and his individual property for the waste and conversion of property of the estate of his father, and the relief sought from that court, if the claim was sustained, was that he should be adjudged to be personally liable for and should pay out of his individual property more than $900,000 to his successor in the administration of his father's estate. But there was no notice or warning of any such claim, or that any such relief would be sought if the petitioner's prayer was granted, either in the petition on which this claim was adjudged or in the notice thereof which was published and served upon the defendant. Petition and notice alike were limited to the issues whether or not the defendant should be removed as executor, whether or not he should be ordered to account for the unadministered assets of his father's estate, the true state of that account, and whether or not the Trust Company should be appointed administrator de bonis non in his place. The adjudication of these issues did not involve the determination of the defendant's personal liability for waste and maladministration. The claim of that liability and the issue arising upon it were beyond the scope of the jurisdiction of the probate court in the proceeding before it, which extended only to the administration and disposition of the assets of the estate of William M. Ferry; no notice that this claim and issue would be considered or adjudicated was given by the petition of the legatees, or by the notice that was published and served upon the defendant, and that court never acquired any jurisdiction to determine them. In re Rosser, 41 C. C. A. 497, 505, 101 Fed. 562, 570; Fenton v. Garlick, 8 Johns. (N. Y.) 195, 196; Munroe v. People, 102 Ill. 406, 411, 412; Hanifan v. Needles, 108 Ill. 403, 410, 411. In the case last cited the statutes gave authority to the county court to require the executor to settle his accounts as executor, and if he failed to do so to deal with him as for a contempt and to remove him. The court gave him notice to appear "and present his accounts of said estate for settlement as said executor"; he failed to do so, and the court removed him. The Supreme Court of Illinois held that the county court had no jurisdiction to make the order of removal and that it was void, because no notice that the court would hear or consider the question of his removal was given to the executor. In Munroe v. People, 102 Ill. 406, 411, 412, that court held that an order of the county court that the administratrix be removed, based on an order to show cause why the administratrix should not pay an allowed claim without notice of possible removal or revocation of her letters, was "absolutely void for want of jurisdiction in the county court to act."

At the request of the trustee a referee in bankruptcy required Rosser, a bankrupt, to submit to an examination under subdivision 9, §§

7, 21, Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 518, 552 [U. S. Comp. St. 1901, pp. 3125, 3430]).  He and other witnesses appeared and testified, the referee found that he had received and failed to account for or to schedule $2,500, which was a part of his estate, and, without any further notice that such an order was contemplated, ordered him to pay it over to the trustee.  Proceedings for contempt based upon this order and the failure of the bankrupt to comply with it were set aside by this court, and the order was adjudged to be void because the bankrupt never had any notice of the presentation or hearing of the claim against him for this $2,500 until after the order for its payment was made.  In re Rosser, 41 C. C. A. 497, 498, 504, 505, 101 Fed. 562, 563, 569, 570.

But perhaps the best illustration of the principle which governs this case is found in Fenton, Administrator of Ramsdall, v. Garlick, Trustee of Garlick, 8 Johns. (N. Y.) 195.  The word "trustee" in this case is used in the sense of the word "garnishee" in similar proceedings in the Western states.  Ramsdall, who had obtained a judgment against Samuel Garlick, brought an action in a court of general jurisdiction in the state of Vermont against Seth Garlick, as trustee of Samuel, wherein he alleged that Seth had in his possession money and personal property of Samuel of the value of $300.  Seth appeared and testified, and the court adjudged that he had moneys of Samuel in his possession of the value of $300, and after the death of Ramsdall ordered that his administrator have execution for his debt, damages, and costs against the goods and chattels of Samuel in the hands of Seth.  Such an execution was issued and returned unsatisfied.  Meanwhile Seth had departed from the state of Vermont and taken up his residence in the state of New York.  Thereupon the Vermont court granted a rule upon him that he appear at the next term of that court and show cause why an execution should not issue upon the judgment against him and his own proper goods, chattels, and estate.  The rule was served upon him in New York, and the Vermont court thereupon adjudged that the plaintiff should recover of Seth Garlick the amount of the judgment against Samuel Garlick and should have execution against the goods, chattels, and estate of Seth.  After the rendition of this judgment an action was brought by the administrator of Ramsdall in one of the courts in the state of New York, and the Supreme Court of that state said:

"This was an action of debt on a judgment obtained in Vermont against the defendant as trustee of Samuel Garlick.  The judgment was in the nature of one founded on the suggestion of a devastavit committed by the defendant, in the character of trustee, and against such a charge he was entitled to be heard.  The mere fact of his having formerly had assets or moneys of Samuel Garlick in his hands was not sufficient to authorize a judgment against his own property, in his individual capacity, until opportunity had been given to him to show in what manner he had disposed of those assets.  This opportunity he has never had; for, at the time he was called upon to show cause, by a rule in the nature of a writ of scire facias, he resided in this state, and the service of that rule upon him, while within this state (which fact was admitted), was void, not only upon general principles, but by the express words of our statute, passed the 10th of August, 1798.  Sess. 22, c. 3.  The judgment consequent upon such a service cannot be regarded by this court as the ground of a suit; nor will an action be sustained upon a judgment ob-

tained in another state against an inhabitant of this state, without any personal summons or service of process. ' This was so decided in Kilburn v. Woodworth, 5 Johns. 37 [4 Am. Dec. 321], and in Robinson v. Executors of Ward, 8 Johns. 86.[1] The proceeding against the defendant, as trustee, in the year 1803, was not notice of any proceeding upon which this judgment was obtained, any more than a proceeding, in the first instance, against an executor or administrator, would be sufficient to warrant a judgment founded on a devastavit. The original suit, in both cases, is rather a proceeding in rem, than in personam. It is against the assets in the hands of the executor or trustee, belonging to the party whom they represent, and there must be a new suit, or a notice which is equivalent to it, before the trustee can be charged in his own private property or person as for a breach of trust. There was no such new suit or notice to warrant the judgment in this case; and, consequently, no action can be sustained upon it in this state. Agreeably to the stipulation of the parties, a judgment of nonsuit must be entered."

Because no notice of the nature of the claim against Ferry, to the effect that he and his individual estate were liable for debts and damages on account of his waste and conversion of the assets of the estate of his father, or of the relief that was sought and obtained from the probate court of Michigan upon this claim, was legally given to the defendant Ferry before the decree thereon was rendered, because the proceeding in that court was in rem, and the adjudication of this personal claim for debt or damages was beyond the scope of the jurisdiction of that court in that proceeding, and because that court was without power to adjudge in that proceeding that the Trust Company as administrator de bonis non or personally should recover that debt or those damages, the order and decree of that court that the defendant was individually liable for and should pay to the Michigan Trust Company, administrator de bonis non of the estate of William M. Ferry, on account of the devastavit found—$915,355.08—was beyond its jurisdiction and void, and an action upon it cannot be sustained in any other jurisdiction.

This conclusion has not been reached without consideration of the remarks of Mr. Woerner in section 534 et seq. of his American Law of Administration, and the opinions of the courts in Pyatt v. Pyatt, 46 N. J. Eq. 285, 18 Atl. 1048, 1049; Seaman v. Duryea, 11 N. Y. 324, 329; Storer v. Freeman, 6 Mass. 435, 439, 4 Am. Dec. 155; In re Estate of Wincox, 85 Ill. App. 613; Salomon v. People, 89 Ill. App. 374; Lett v. Emmett, 37 N. J. Eq. 535; Gray v. Gray, 39 N. J. Eq. 332, and other cases, in some of which damages for devastavits were considered and allowed in accountings in probate courts. But the question presented in this case does not appear to have been carefully considered and authoritatively ruled under statutes and facts similar to those in the case in hand in any of these decisions, and so far as the opinions and practice in these and other cases are inconsistent with the conclusions which have been reached they fail to commend themselves to our judgment.

The argument of counsel for the plaintiffs that the guardian ad litem and next friend of the defendant appointed by the Michigan court and the attorneys employed with the approval of the Utah court by the general guardians of his person and of his estate in Utah by their appearance, their defense of the claims against Ferry, and their presentation of the cross-petition in the Michigan court waived all objections

[1] 5 Am. Dec. 327.

to its jurisdiction, and estopped the defendant from questioning it, has not been overlooked. But the appearance of attorneys, guardians, and next friends of a person, or even his own appearance in a court, to defend or prosecute a claim of which that court has jurisdiction, does not and cannot estop him from subsequently challenging the jurisdiction of that court to render a decree in that proceeding to which he never assented upon a claim of which that court never acquired any jurisdiction. Moreover, the probate court of Michigan had no jurisdiction to appoint a guardian ad litem to defend, and the guardian ad litem it appointed had no authority to appear, to defend, or to submit to that court any claim of which that court had not previously acquired jurisdiction by lawful service of due process of law upon the defendant (Galpin v. Page. 18 Wall. 350, 365, 373, 21 L. Ed. 959; Insurance Company v. Bangs. 103 U. S. 435, 140. 26 L. Ed. 580), and no service of such process as gave that court any jurisdiction of the claim against his person and estate founded on the alleged devastavit had ever been made.

For the same reason the general guardians, the court in Utah, and the attorneys they employed were without power to bind the person or to charge the estate of Ferry in Utah with this claim by their appearance in the Michigan court. The limit of their jurisdiction was over the person and property of the defendant in Utah, and it was beyond their power to bind the former or to charge the latter by any appearance for them in or submission to a court which acquired no jurisdiction thereof, of any claim against either. They could not by their action in Michigan subject the person of their ward and client in Utah to arrest and imprisonment on the process of the Michigan court, or his estate in Utah to decrees by that court upon claims of which it had not otherwise acquired jurisdiction (Brown v. Fletcher's Estate, 210 U. S. 82, 91, 28 Sup. Ct. 702, 52 L. Ed. 966; Insurance Company v. Bangs, 103 U. S. 435, 439, 26 L. Ed. 580). and the presentation by the next friend of the defendant of his claim that the powers of attorney and agreements of the residuary legatees presented a good cause why he should not render any account, and entitled him to a decree closing the estate without such an account, constituted no appearance in the litigation over the claim for the devastavit and no waiver of the defendant's right to maintain that the probate court of Michigan never acquired jurisdiction thereof. The decree of the court below was right; it must be affirmed, and it is so ordered.