## Rowe v. Thompson et al.

*Equity—Jurisdiction—Remedy at law—Breach of warranty—Deed—Acts of April 6, 1859, May 17, 1921, and May 19, 1923.*

1. A bill in equity cannot be maintained to recover damages from the defendant for an alleged failure on his part to make good to plaintiff his covenants of warranty in a deed to the plaintiff. The remedy in such case is at law.

2. There is nothing in the Act of April 5, 1859, P. L. 387, or the Acts of May 17, 1921, P. L. 899, and May 19, 1923, P. L. 272, relating to service of bills in equity upon non-resident defendants, to give a court of equity jurisdiction in such a case.

3. Under the Act of April 5, 1859, P. L. 387, relating to service upon non-resident defendants in equity, the fact that the non-resident's property is within reach of the court will not give the court jurisdiction of his person so as to authorize service upon him in another county and to enter a personal decree against him.

*Deed—Exchange—Warranty.*

4. While an exchange of real estate has a warranty in law incident to it, to make such assurance, it is indispensable that the word "exchange" should be used.

Rule to show cause why the order directing service upon defendants outside of Greene County should not be vacated and the service of the bill set aside. C. P. Greene Co., No. 250, in Equity.

*A. A. Purman* and *William M. Hall*, for plaintiff.

*Kyle & Rinehart*, for defendants.

RAY, P. J., Aug. 4, 1924.—This is a proceeding in equity. The bill of complaint was filed Nov. 13, 1923. On the same day, on motion of the attorneys for plaintiff, the court made an order directing service of the bill on the defendants, both of whom live out of the jurisdiction of the court, the defendant Thompson in Fayette County, Pennsylvania, and the defendant Campbell in Youngstown, Mahoning County, Ohio. Service of the bill was duly made upon the defendants and duly returned in accordance with the provisions of the Act of April 6, 1859, P. L. 387, the Act of May 17, 1921, P. L. 899, and the Act of May 19, 1923, P. L. 272, except that it is denied that the defendant Thompson was served with a copy of the order of the court authorizing service of the bill upon him, as required by the said Act of 1859.

On Dec. 10, 1923, the defendant Thompson, by his attorneys, Kyle and Rinehart, under a special appearance entered by leave of court, moved the court to vacate the order of Nov. 13, 1923, and in support of the said motion assigned, *inter alia*, the following reasons:

"2. The said bill of complaint was served upon the defendant, J. V. Thompson, on November 24, 1923, in Fayette County, by W. C. Bishop, a Deputy Sheriff of Fayette County; but no copy of the said order authorizing the service of said bill was served upon the defendant, J. V. Thompson, as required by the said Act of April 6, 1859.

"3. That it appears in and by the said bill of complaint so served upon the defendant, J. V. Thompson, that the principal defendant in the said bill is the said J. V. Thompson, and that the defendant, James A. Campbell, has no real interest in the subject-matter of the said suit, but occupies the position of a stake-holder only.

"4. It further appears in the said bill that the said suit in equity is not concerning goods, chattels, lands, tenements or hereditaments, or for the perpetuating of testimony concerning lands, tenements, etc., situate and being within the jurisdiction of this court, or concerning any charge, lien, judgment, mortgage or encumbrance thereon.

"5. It appears by the said bill that the same is concerning a claim by the plaintiff against the defendant, Josiah V. Thompson, on certain alleged cove-

Rowe v. Thompson et al.

nants of warranty in a deed, and that the plaintiff seeks by the said bill in equity to recover from the said Josiah V. Thompson a large sum of money which plaintiff alleges is due and owing to her from the said Josiah V. Thompson by reason of the failure of title to a certain tract of coal land in Cumberland Township, which she alleges was conveyed by the said Josiah V. Thompson to her by a general warranty.

"6. That in and by the first paragraph of the prayer of the said petition, plaintiff prays that it be ordered, adjudged and decreed that the defendant, James A. Campbell, *convey by proper deed and assurance* to your orator certain lands, situate in Greene County, and that the said prayer is a prayer for a personal decree against James A. Campbell.

"7. That in and by the second paragraph of the prayer of said bill, plaintiff prays that it be ordered, adjudged and decreed that the defendant, Josiah V. Thompson, make, execute and deliver to the plaintiff any necessary paper or assurance to vest in her the title to certain real estate described in said bill, and that this is a prayer for a personal decree against said Thompson.

"8. That in and by the third paragraph of the prayer of said bill, plaintiff prays that it may be ordered, adjudged and decreed that defendant Thompson is liable on his warranty, above referred to, in the sum of $22,500, with interest from Nov. 24, 1913, together with the expense and counsel fees incurred in the defence of the title, aggregating $8241.12, with interest from the time of bringing this suit, and it, therefore, appears that this suit is brought to recover said sum from the said defendant, and for no other purpose.

"9. That it appears in and by the said bill of complaint, that this court did not have jurisdiction, under the said Act of April 6, 1859, to make an order directing the service of the bill of complaint upon the defendants outside of the jurisdiction of this court.

"Wherefore, the defendant, Josiah V. Thompson, prays the court to vacate the order made on the 13th day of November, 1923, directing that service might be made upon him in Fayette County, Pennsylvania, and upon defendant, James A. Campbell, in Mahoning County, Ohio, and to set aside *(a)* the service of the bill of complaint upon the defendant, Josiah V. Thompson, and *(b)* the service of the bill of complaint and any other papers, if any such service has been made, upon the defendant, James A. Campbell, and to render such other and further relief in the premises as the nature of the case may require."

Thereupon the court awarded the pending rule upon the plaintiff "to show cause why the order of this court, directing service upon the defendant, Josiah V. Thompson, in Fayette County, Pennsylvania, and upon the defendant, James A. Campbell, in Mahoning County, Ohio, should not be vacated and the service of the bill and all other papers upon the said defendants, or either of them, in pursuance to said order, quashed and set aside."

The principal facts set up in the bill of complaint, upon which the plaintiff bases her prayer for relief, briefly stated, are as follows:

That on and before Jan. 7, 1913, she was the owner of an undivided one-seventh interest in two tracts of the Pittsburgh vein of coal, situate in Monongahela Township, Greene County, Pennsylvania, known as the Noah M. Hartley tract No. 2, containing 108 acres and 40 perches, and the C. A. Mestrezat tract, containing 77.96 acres, both of which tracts are described by metes and bounds in the bill, and that the remaining undivided interests therein were owned by the defendant Thompson "and others;" that on or about Jan. 7, 1913, the defendant Thompson negotiated an agreement with defendant Campbell to

sell and convey to him several thousand acres of Greene County coal; that in order to carry out this agreement with defendant Campbell, defendant Thompson solicited and procured the plaintiff to join in a deed with him and the other owners in the proposed deed to the defendant Campbell, whereby she conveyed her undivided one-seventh interest in the said Hartley and Mestrezat tracts, as well as her undivided interests in other coal lands situated in Greene County, Pennsylvania, to Campbell, and that in consideration therefor she was to receive $750 per acre for each acre so conveyed, and at the same rate for a fractional part of an acre; that the said deed, purporting to convey 5172.262 acres, on delivery to defendant Campbell was objected to by him, claiming he had not purchased the said Hartley and Mestrezat tracts, and that they should be excluded from the deed, and that thereupon a written agreement was entered into Nov. 26, 1913, between the two defendants, Campbell and Thompson, whereby the said two tracts were to be excluded from Campbell's purchase, and Campbell was to convey them to Thompson; that then Thompson completed the transaction with Campbell and Campbell paid him for the coal so conveyed in cash and promissory notes secured by mortgages, which notes have since been paid to or disposed of by Thompson; that in November, 1913, it was agreed between the plaintiff and defendant Thompson that Thompson, instead of paying the plaintiff $750 per acre for the coal she had conveyed to defendant Campbell, as provided in their former agreement, should convey to her an equal number of other acres of Greene County coal; that in pursuance of this agreement, Thompson, by a deed of general warranty, dated Nov. 24, 1913, did convey to the plaintiff the said equal number of other acres of Greene County coal, and that among the tracts therein conveyed was one tract described by metes and bounds in the bill, situate in Cumberland Township, Greene County, Pennsylvania, containing thirty acres; that one L. T. Laidley, in 1920, instituted a proceeding in ejectment against Mrs. Rowe, the plaintiff in this case, and after long litigation, it was finally determined that the title to and right of possession of the said thirty-acre tract of coal was in the plaintiff Laidley; that the defendant Thompson has failed and refused to indemnify the plaintiff for her loss of title to the said thirty acres of coal, and has failed and refused to pay her counsel fees and expenses in that behalf; that Thompson was adjudged a bankrupt Sept. 10, 1917, in the District Court of the United States for the Western District of Pennsylvania, and that all his property and assets have been sold and distributed by direction of that court; that the financial responsibility of the defendant Thompson is doubtful, and that the plaintiff needs relief in equity and prays therefor as follows:

"(1) That it be ordered, adjudged and decreed that the defendant, James A. Campbell, convey by proper deed and assurance to your orator an undivided one-seventh interest in the above described tracts of land known as the Noah M. Hartley No. 2 and C. A. Mestrezat.

"(2) That it be ordered, adjudged and decreed that the defendant Thompson make, execute and deliver to the plaintiff any necessary paper or assurance to vest in her the said undivided one-seventh interest as set out in the first prayer.

"(3) That it be ordered, adjudged and decreed that the defendant Thompson is liable on his warranty and covenants in his said deed, touching the said thirty-acre tract, to the plaintiff in the sum of $22,500, with interest from the 24th day of November, 1913, together with expenses and counsel fees incurred in the defence of the title, aggregating $8241.12; that he pay this $8241.12

Rowe *v.* Thompson et al.

to the plaintiff, with interest from the time of bringing this suit, and that upon this total liability he be entitled to a credit of $19,950, being for 26.6 acres, at $750 an acre, if and when the proper deed and assurance of James A. Campbell, or other person, if need be, is given to the plaintiff securing and giving to her good title in fee simple, free and clear of all encumbrances, of the said coal and mining rights of the said two tracts of land known as Noah M. Hartley No. 2 and C. A. Mestrezat to the extent of the one-seventh undivided interest therein.

"(4) For such other relief as is proper."

That subsequently to the filing of her said bill of complaint, and on Jan. 7, 1924, the plaintiff amended the first paragraph of her prayer for relief by striking therefrom the words "convey by proper deed and assurance to" and inserting in lieu thereof the following words, "holds by the legal title for the use of."

From the foregoing facts set out in the bill it would appear that the defendant Campbell has no interest in the two tracts of coal therein described —the Hartley No. 2 and the Mestrezat—he having refused to accept the deed from the defendant Thompson, the plaintiff, Mrs. Rowe, and the other owners of the 5712.262 acres of coal until it was agreed between himself and the defendant Thompson that these two tracts should be eliminated from his purchase by his conveyance of them to Thompson. This fact practically eliminates Campbell as a defendant in this case, leaving Thompson as the one and only real defendant. As against the defendant Thompson, the plaintiff seeks to procure a judgment on his warranty in a deed to her, because of an alleged failure of title to one tract of coal therein conveyed. In paragraph 3 of her prayer the plaintiff asks that it be ordered, adjudged and decreed that the defendant Thompson is liable on his warranty and conveyance in his deed to her for thirty acres of coal at $750 per acre, with interest thereon from Nov. 24, 1913, and also for expenses and counsel fees incurred in defending her title in the Laidley suit, aggregating $8841.12, together with interest thereon from the date of the bringing of this suit. In the light of this third paragraph of her prayer, as well as of the entire prayer, this proceeding is not an action *in rem*, but a personal action against the defendant Thompson. It is an action to recover damages from him for an alleged failure on his part to make good to her his covenants of warranty in the said deed. It is our opinion, therefore, that the court was without jurisdiction in this proceeding, and would have been without jurisdiction, even had the defendants been residents of this county, to make the said order complained of directing service of the bill upon the defendants. The plaintiff has a full and adequate remedy by a suit at law.

In Coleman's Appeal, 75 Pa. 441, Justice Sharswood, of the Supreme Court, delivering the opinion, *inter alia*, says:

"It will be seen from this brief review that it has not been the policy of our jurisprudence to bring non-residents within the jurisdiction of our courts unless in very special cases. In proceeding against them for torts, even property belonging to them cannot be reached by process, and in cases of contract, nothing but the property can be affected, unless the defendant voluntarily appear and submit to the jurisdiction. We may congratulate ourselves that such has been the policy, for nothing can be more unjust than to drag a man thousands of miles, perhaps from a distant state, and in effect compel him to appear and defend under penalty of a judgment or decree against him *pro confesso.*

Rowe *v.* Thompson et al.

"The Act of 1859 ought, therefore, to receive a construction in harmony with this policy. There exists no good reason why courts of equity should be invested with a more enlarged jurisdiction against non-residents than courts of law. On the contrary, as trial by jury is a constitutional right guaranteed as well to strangers as to our citizens, the inclination should be in a different direction. Though it be an undoubted principle that wherever a court of equity has jurisdiction, it will go on to make a complete decree so as to settle the entire controversy between all the parties, it would be an extreme consequence from that principle to hold, as we are asked to do in this case, that any subject of property within its reach will give it jurisdiction of the person of a non-resident defendant so as to authorize a service of process upon him in any other state or country, and to enter a personal decree against him, if he does not appear, for the payment of money. . . .

"If we examine the language of the Act of 1859, we must remark that it is strictly and carefully confined to two classes of cases. First, where a suit in equity has been or shall be instituted for the perpetuating of testimony concerning any lands, tenements or hereditaments, or for the perpetuating of testimony concerning any lands, tenements, and so forth, situate or being within the jurisdiction of the court, or concerning any charge, lien, judgment, mortgage or encumbrance thereon. And, second, where the court has acquired jurisdiction of the subject-matter in controversy by the service of its process on one or more of the principal defendants.

"As to the cases comprehended in the first class, we are of opinion that the bill must be confined, at least so far as the interest of the foreign defendant is involved, to a prayer for a decree affecting only the property in question. If it goes further and asks for relief by a decree against the defendant personally, though it would be entirely competent for the court to make such decree, if the person of the defendant was within their jurisdiction, it is not a case within the purview of the act, and the court has no authority to direct the service of process upon the defendant."

The doctrine of this case in relation to service on defendants resident without the jurisdiction of the court is still the law in Pennsylvania, so far as we have been able to ascertain, and it has been cited with approval, among others, in the following cases: Ralston's Appeal, 93 Pa. 136; Wallace *v.* United Electric Co., 211 Pa. 473, 476-478; Martin *v.* Martin, 214 Pa. 389; Miller *v.* Cockins, 239 Pa. 558, 566; General Chemical Co. *v.* Stockton, 50 Pa. C. C. Reps. 656; Mengel *v.* Lehigh C. & N. Co., 24 Pa. C. C. Reps. 152.

In Vandersloot *v.* Penna. W. & P. Co., 259 Pa. 99, a bill in equity was brought in York County against a Pennsylvania corporation to compel the removal of a dam across the Susquehanna River, partly in York County and partly in Lancaster County, which it was alleged caused waters to overflow complainant's land in York County. By leave of the York County court, service of the bill was made on officers of the defendant corporation in New York, where the defendant's principal office was located, and in Lancaster County, where its mills were situate. The prayer of the bill comprehended relief affecting the entire dam of the defendant, and also relief requiring a decree against the defendant personally. In discussing the motion by the defendant to set aside the service of the bill, the court below, *inter alia*, said: "The plaintiff's bill contains the only facts upon which the court can yet rely, and an inspection thereof clearly reveals a sufficient subject-matter within the jurisdiction of this court to warrant the court in authorizing process of service on the defendant in accordance with the provisions of the Act of April 6, 1859, § 1, P. L. 387. . . . It might be that facts or matters would be revealed

Rowe *v.* Thompson et al.

by regular and legal investigation which would render the jurisdiction of this court nugatory; but until . . . properly shown, we cannot assume . . . that any such conditions exist."

Thereupon, on appeal by the defendant to the Supreme Court, the lower court was reversed.

The Supreme Court, Justice Moschzisker delivering the opinion, says: "The learned court below fell into error by relying exclusively upon the averments of the bill and failing to take into account the controlling importance of the prayers for relief (Coleman's Appeal, 75 Pa. 441); when the latter are kept in mind without the need for further light upon the subject, it becomes clear that the attempt to secure jurisdiction under the Act of 1859 was 'nugatory,' and that the rule to avoid the service made upon defendant should have prevailed."

It will be remembered that it was agreed between the two defendants in this case, Thompson and Campbell, that the Hartley tract of coal No. 2 and the Mestrezat tract should be eliminated from Campbell's purchase and that Campbell should convey these two tracts to Thompson. Following this agreement, Thompson and Mrs. Rowe entered into a second contract, whereby it was agreed between them that Thompson, instead of paying her $750 per acre for the coal she had conveyed to Campbell, as provided in their first contract, should convey to her other Greene County coal lands equal in acreage to the acreage she had conveyed to Campbell.

In pursance of this agreement, Thompson, by deed of general warranty, made such conveyance of coal lands to Mrs. Rowe. Among the tracts so conveyed was the thirty-acre tract which has given rise to this controversy. It is the contention of the defendant Thompson, with which contention we agree, that this contract and conveyance constituted an exchange—a mutual grant of equal interests in land, the one in consideration of the other. To constitute an exchange in law, it has been said that five circumstances are necessary: .

1. That the estates given be equal.

2. That the word *excambium*, or exchange, be used, which cannot be supplied by any other word or described by circumlocution.

3. That there be an execution by entry or claim in the life of the parties.

4. That if it be of things which lie in grant, it be by deed.

5. That if the lands lie in several counties, or if the thing lie in grant, though they be in one county, it be by deed indented.

There is no allegation in the bill that this transaction between Thompson and the plaintiff was an exchange of lands under the legal meaning of that term as applied to conveyancing; and this failure, the defendant contends, is fatal in any event to the plaintiff's right to recover in this proceeding. In Dean *v.* Shelly et ux., 57 Pa. 426, the action was brought on a covenant of warranty contained in a deed. Dean owned a farm in Susquehanna County, Pa., and Shelly a farm in Mahaska County, Iowa. Dean sold his farm to Shelly for $1900, and in part payment took the conveyance of Shelly's Iowa land, which deed contained a clause of general warranty and was joined in by Shelly's wife. Dean, by direction of Shelly, conveyed his farm to Shelly's wife, and she took possession. Shelly's title to the Iowa land failed, and Dean brought suit against the defendants and attached the land he had conveyed to Mrs. Shelly. On the trial, the verdict was for the defendants, and on appeal the judgment of the lower court was affirmed by the Supreme Court. The opinion of the Supreme Court was delivered by Justice Sharswood, in which, *inter alia,* he says: "Had the transaction between these parties been an exchange, there would have been a warranty in law incident to it. . . . The

Rowe v. Thompson et al.

plaintiff could have maintained ejectment, not only against Shelly, but any one claiming from him. . . . But exchanges have fallen into disuse in modern conveyancing. To make an assurance of that character, it is indispensable that the word *excambium*—exchange—should be employed, which, as Lord Coke says, is so individually requisite as that it cannot be supplied by any other word or described by any circumlocution: Co. Litt., 51, *b*."

This case (Dean *v*. Shelly et ux.) was cited and approved in Bixler *v*. Saylor, 68 Pa. 146, has been cited and commented on in 98 American Decisions, 235, and is the subject of a note in 22 L. R. A. 779. It has also been cited in 17 Cyc., 825-831-841, and 39 Cyc., 1181.

In so far as we have been able to ascertain, it has never been overruled by any decision in this State, and is still the law of the State. The rule will be made absolute and service of the bill set aside.

And now, Aug. 4, 1924, after hearing and due consideration, for the reasons set out in the foregoing opinion, the rule to show cause is made absolute, the order directing service of the bill and said order on the defendants is vacated, and the service of the bill and all other papers on the defendants, or either of them, is quashed and set aside, and the cost of this proceeding to be paid by the plaintiff.                    From S. M. Williamson, Waynesburg, Pa.